UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT LEXINGTON
CIVIL ACTION NO. 12-73-KSF-JGW

**ORVILLE ROARK**                                                                                    **PETITIONER**

**V.**

**JOSEPH MEKO, WARDEN**                                              **RESPONDENT**

**REPORT AND RECOMMENDATION**

Pending is Orville Roark's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Doc. 1. For the following reasons, I recommend that the petition be denied.

**I. Factual and Procedural History**

In its August 2006 opinion affirming petitioner's conviction and sentence, the Kentucky Supreme Court related the relevant facts as follows:

> On the evening of February 3, 2003, Appellant and his friend Lonnie Clemons went to the home of Curtis Fields. Fields operated a small flea market out of his home. At the time, Fields was incarcerated, and the flea market was being run by Michael Kelly, who also lived in the house. Some time after Appellant and Clemons arrived at the flea market, Kelly shot them. Two conflicting versions of the incident leading up to the shooting were developed at trial.
> In the prosecutor's version, which grew mainly out of Kelly's testimony (which, in turn, was corroborated by statements made by Clemons), the violence stemmed from Appellant and Clemons robbing the flea market. Kelly described the following series of events: Appellant and Clemons entered the flea market, threatened Kelly with a knife, and stole several bags of items from the flea market. As Appellant and Clemons went outside, Kelly locked the door behind them. When Appellant realized this, he began banging on the door and screaming in anger. Kelly was so frightened that he ran upstairs to the bedroom to get a gun. Appellant broke down the front door and followed Kelly up the stairs with the knife. As Appellant entered the bedroom, he screamed, "I'll kill you." But when Appellant saw Kelly with the gun, he turned the knife around (holding it by the blade) and offered it to Kelly. Kelly told Appellant to "just leave ." Appellant retreated down the stairs and told Clemons they should leave because Kelly had a gun. Clemons left the house, but Appellant remained in the kitchen and put his hand into his pocket. Kelly feared that

> Appellant was reaching for a weapon, so he began shooting. He continued shooting as Appellant ran outside to his car. Appellant backed his car out of the driveway, getting shot in the process, and drove away. Clemons, who had been running across the street and away from the house, was also shot.
>
> Appellant's version of the incident was that he was shot without provocation while trying to return items his son had stolen from the flea market earlier in the day. Though Appellant did not testify at trial, other testimony supported this theory of the case. For example, Kentucky State Police Detective Paul Lemaster testified that Appellant said he was shot just after arriving at the flea market, as he was getting out of his truck. Appellant's son, James Roark, confirmed that he and Clemons had stolen some items from the flea market earlier that day. He also claimed that Appellant told him to return the stolen items, but that he refused to do so. A neighbor, Tony Givens, testified that James Roark told him that Appellant said the stolen items needed to be returned to the flea market before Fields, the owner, returned home from prison. Appellant argued that the implication of this testimony is that he was simply returning stolen items to the flea market, not committing a robbery, when Kelly shot him.
>
> The jury convicted Appellant of first-degree robbery and found that he was a first-degree persistent felony offender. Appellant was sentenced to twenty-two years in prison.

*Roark v. Commonwealth*, 2006 WL 2451774 (Ky. Aug. 24, 2006).

In November 2006, petitioner filed a motion for post-conviction relief under Kentucky Rule of Criminal Procedure (RCr)11.42. *See* Doc. 6-2, p. 65-77. The trial court appointed counsel for petitioner but ultimately denied the RCr 11.42 motion in March 2010. *See* Petitioner appealed that decision to the Kentucky Court of Appeals. *Id.* at p. 78-79. In September 2011, the Court of Appeals affirmed the trial court. *See Roark v. Commonwealth*, 2011 WL 3962938 (Ky.App. Sept. 9, 2011). The Kentucky Supreme Court denied discretionary review in February 2012, after which petitioner filed this §2254 petition.

**II. Analysis**

Petitioner raises four issues in his §2254 petition. First, he contends his counsel was ineffective for failing to file a motion for a change of venue. Second, he contends his counsel was ineffective for failing to move for jury instructions regarding voluntary intoxication. Third, he

contends counsel was ineffective for failing to investigate adequately his (petitioner's) alleged intoxication. Finally, petitioner contends he is entitled to habeas relief due to the cumulative effect of the first three enumerated issues.

### A. Issues Raised in Reply Brief Not Properly Before the Court

In his reply to respondent's answer to the habeas petition, petitioner raises issues which were not contained in his §2254 petition. First, petitioner alleges for the first time that counsel should have filed a motion to suppress the purportedly false statement given by Clemons. Doc. 9, p. 1-3. Petitioner also argues for the first time that counsel was ineffective for "allow[ing] the trial to go forward without the DNA result of the knife or without conducting any independent investigation with respect to fingerprints on the knife." *Id.* at p. 7-9.[1] Petitioner also argues for the first time that counsel "would not allow him to take the stand and testify on his behalf." *Id.* on p. 6.

"A traverse or reply to an answer to a petition for writ of habeas corpus is not the proper pleading for a habeas petitioner to raise additional grounds for relief." *Vivoda v. Davis*, 2010 WL 431726, at *6 (E.D.Mich. Feb. 2, 2010). Even in a case involving the death penalty, the Sixth Circuit has held that an issue raised in a reply (i.e., traverse) "was not properly before the district court, and the district court did not err in declining to address it." *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005). Accordingly, the Court should decline to discuss all of the issues raised by petitioner for the first time in his reply "because they are not properly before this Court." *Vivoda*, 2010 WL 431726 at * 6.

### B. Counsel's Failure to Move for a Change of Venue Does Not Warrant Habeas Relief

---

[1] Petitioner uses all capital letters in both his §2254 petition and his reply brief. However, I will follow the normal capitalization rules when quoting from either the §2254 petition or reply brief.

Petitioner contends counsel was ineffective for failing to move for a change of venue. To support his argument, petitioner asserts that two articles about his offenses were published in a local newspaper prior to trial and that "every person on my juror [sic] panel knew of my prior problems with the law, I was convicted due to my past and not for the present charges." Doc. 1, p. 5.

In his answer, respondent admits petitioner's allegations regarding the publication of the newspaper articles. However, respondent notes that "during the *voir dire* examination of the jury, only three prospective jurors stated that they had formed an opinion about the case, and all three were excused. A fourth juror was excused for cause because he stated he thought someone in Roark's family might have stolen his CB a few years earlier. The other jurors outlined in Roark's state court appeal neither stated that they were biased against him nor that they could not render a fair and impartial verdict." Doc. 6-1, p. 11.

This issue was not raised in petitioner's direct appeal. Petitioner did raise the issue in his RCr 11.42 motion and in his appeal of the trial court's denial of that motion. The Kentucky Court of Appeals affirmed the trial court, holding that:

> Roark's first contention that his counsel should have moved for a change of venue is countered by the fact that, during voir dire, only three prospective jurors indicated they had formed an opinion about the case. Roark asserts that the two newspaper stories which were published were so prejudicial that the venue should have been changed. There was no motion to strike, however, and on direct appeal, there was no argument that the jury was improperly empaneled. Thus, we find Roark's argument regarding change of venue to have been refuted by the record.

Doc. 6-2, p. 139-140.

In order to demonstrate ineffective assistance of counsel, a petitioner must make two showings. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel'

4

guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In order to show prejudice, a defendant must show a reasonable probability or substantial likelihood of a different result. *See Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011). A court need not address both *Strickland* prongs if a petitioner fails to make a sufficient showing on either prong. *See, e.g., United States v. DeGroat*, 102 Fed.Appx. 956, 959 (6th Cir. 2004).

A reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Strickland*, 466 U.S. at 689. The Sixth Circuit has held that "[s]trategic choices by counsel, while not necessarily those a federal judge in hindsight might make, do not rise to the level of a Sixth Amendment violation." *McMeans v. Brigano*, 228 F.3d 674, 682 (6th Cir. 2000). The "range of reasonable applications" of the *Strickland* standard "is substantial" so under §2254(d), "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011).

Respondent seemingly argues that petitioner's counsel's decision to not move for a change of venue was a strategic choice. *See* doc. 6-1, p. 11-12 ("It appears that Roark, his trial counsel, and his counsel on direct appeal were all satisfied that the jury chosen to hear his case was a fair jury. Had Roark believed that any jurors who were chosen to hear his case were biased against him, he could have moved to strike them. This is an issue that could have been raised on direct appeal, but apparently neither his trial counsel nor his appellate counsel believed this issue had merit."). In other words, respondent contends that the simple absence of a motion for change of venue means that there were no proper grounds to make such a motion. The fact that no motion for a change of

venue was made, standing alone, does not demonstrate counsel's effectiveness. However, even if the Court assumes (solely for purposes of argument) that counsel was deficient for not moving for a change of venue, petitioner is not entitled to habeas relief as he has not shown prejudice.

"[I]f prejudicial pretrial publicity jeopardizes a defendant's right to a fair trial by an impartial jury, the court should grant the defendant a change in venue." *Campbell v. Bradshaw*, 674 F.3d 578, 593 (6th Cir. 2012). Mere preexisting knowledge of the case, or even an opinion as to the merits, is insufficient to lead to a presumption of a tainted juror; instead, the question is whether a juror was able to swear that he could set aside any preexisting opinion and would decide the case on the evidence presented. *Id.* at 594.

Petitioner has not shown which juror was actually biased or tainted. Accordingly, petitioner is not entitled to habeas relief because he has not shown a substantial likelihood that a motion for change of venue would have been successful–i.e., petitioner has not shown that he was prejudiced by counsel's failure to move for a change of venue. *Id.* ("We acknowledge that Campbell's case was featured prominently in local media coverage and that most of the prospective jurors were aware of the case. However, Campbell has not shown sufficient facts to demonstrate presumptive prejudice based on pretrial publicity because we 'rarely presume[ ]' prejudice based on pretrial publicity, and Campbell has not shown the that there was 'an inflammatory, circus-like atmosphere' that would support finding prejudice in this case. Further, Campbell has failed to show that he has suffered actual prejudice. Counsel and the trial court carefully questioned prospective jurors during voir dire concerning their knowledge of the case from news reports and whether they could judge the case based solely on the evidence that would be presented in court. A number of prospective jurors indicated that they could not, and were excused. Notably, Campbell has not identified any juror who

was actually seated that indicated an inability to set aside any prior knowledge about the case or to judge the case fairly and impartially. . . . As Campbell has not demonstrated any presumptive or actual prejudice based on pretrial publicity, he suffered no prejudice from his counsel's failure to move for a change in venue.") (internal citation omitted). The same rationale applies here.

### C. No Showing of Ineffective Assistance of Counsel Regarding Jury Instructions

Petitioner's second argument is that his counsel was ineffective for failing to move for jury instructions on voluntary intoxication and wanton endangerment. Doc. 1, p. 7. In its entirety, the body of petitioner's argument is:

> Based upon the evidence provided to the jury there is a reasonable probability that Orville would have been found to be voluntarily intoxicated and therefore unable to form the requisite intent for robbery 1st degree. Furthermore, a jury could have found Orville guilty of wanton endangerment in the 1st or 2nd degree. Counsel's performance prejudiced Orville because wanton endangerment in the first degree is a Class D Felony which carrys [sic] a penalty of 1-5 yrs. Even if convicted of P.F.O. 1st Degree, he could have only recieved [sic] 10 years.

*Id.* In his reply brief, petitioner briefly fleshes out his argument by contending that "due to his heavy drinking that day, once he [petitioner] went to sleep, when he awoke, he could not remember anything about the incident that happen [sic], he was being accused of." Doc. 9, p. 6.

Petitioner did not raise this issue in his direct appeal but he did raise it in his RCr 11.42 motion. The Kentucky Court of Appeals concluded petitioner was not entitled to relief, holding:

> Next, Roark argues his counsel was ineffective in failing to move for a voluntary intoxication jury instruction. He contends that the large amount of alcohol he consumed was material in his defense. Roark's counsel did inform the jury that he was intoxicated at the time he committed the robbery. The Commonwealth also correctly notes that Roark's defense was that he was returning to the flea market to pay for an item his son had stolen. This would be in contradiction to Roark's contention that he was intoxicated and did commit the robbery. . . . [T]here was no evidence that Roark was so out of it, he did not know what he was doing. In fact, his argument was that he had decided to go back to pay for the lighter. Thus, we find the trial court did not err in finding that the record refuted this issue.

7

Doc. 6-2, p. 140.

For claims adjudicated on the merits in state court, a petitioner is entitled to federal habeas relief under 28 U.S.C. §2254 if the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . resulted in a decision that was based on an unreasonable determination of the facts . . . ." 28 U.S.C. §2254(d)(1)-(2). The Sixth Circuit has held in a habeas context that there is no Supreme Court precedent finding a constitutional right to an intoxication instruction. *Hill v. Mitchell*, 400 F.3d 308, 322 (6th Cir. 2005). Accordingly, the Kentucky Court of Appeals' decision cannot be deemed contrary to applicable Supreme Court precedent.

Moreover, petitioner was not entitled to an intoxication instruction under Kentucky law. "In order to justify an instruction on intoxication, there must be evidence not only that the defendant was drunk, but that she was so drunk that she did not know what she was doing." *Springer v. Commonwealth*, 998 S.W.2d 439, 451 (Ky. 1999). Petitioner has not pointed to any testimony showing that he was so intoxicated that he was unable to know what he was doing. In addition, petitioner was able to drive to the scene of the crime, produce a knife, rob Kelly and drive away from the crime scene. Accordingly, petitioner has not shown that he was so drunk as to be entitled to a voluntary intoxication instruction. Counsel cannot be deemed ineffective for failing to ask for an instruction for which his client (petitioner) was not entitled.

Petitioner is also not entitled to habeas relief for his claims regarding an entitlement to jury instructions on the lesser-included offenses of wanton endangerment in the first and second degrees. First, an alleged violation of Kentucky state law is not cognizable in a federal habeas proceeding. *See, e.g., Bowling v. Parker*, 138 F.Supp. 2d 821, 906 (E.D.Ky. 2001), *aff'd* 344 F.3d 487 (6th Cir.

2003) ("neither a violation of state law nor a state court's decision applying purely state law may be reviewed by a federal habeas corpus court since any such errors in that regard are not of a constitutional magnitude."). Second, "in this Circuit, the failure to give a jury instruction on a lesser-included offense [in a non-capital case] is not of a character and magnitude to be cognizable on federal habeas corpus review." *David v. Lavinge*, 190 F.Supp.2d 974, 986 (E.D.Mich. 2002). *See also Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002) ("the Sixth Circuit has held that failure to instruct on a lesser included offense in a noncapital case is not such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.") (citation and quotation marks omitted). In short, petitioner is not entitled to habeas relief.

### D. No Relief for Counsel's Alleged Failure to Investigate

Petitioner next argues that he was denied due process "when defense counsel failed to adequately investigate and present evidence of Orville Roark's intoxication the night of the alleged robbery." Doc. 1, p. 8. In the supporting facts section of his §2254 petition, petitioner alleges that:

> Counsel never investigated into Orville's level of intoxication on the night in question. Had she investigated she would have learned that Orville consumed large quantities of intoxicating substances the night of the alleged robbery. Had she questioned Clemons, Roark and Givens regarding Roark's level of intoxication, she could have provided additional evidence to support a finding of voluntary intoxication.

*Id.*

As previously discussed, petitioner has not shown that he was so intoxicated as to be unable to know what he was doing at the time of the robbery. Petitioner has not shown, therefore, that there is a substantial likelihood that any allegedly deficient investigation by counsel would have resulted in a different outcome to petitioner's trial. In addition, though counsel did not present an

intoxication defense, counsel did present at least some evidence of petitioner's having been intoxicated, as noted by the Kentucky Court of Appeals. *See* Doc. 6-2, p. 140 ("Roark's counsel did inform the jury that he was intoxicated at the time he committed the robbery.").

Presentation of the intoxication defense advocated for by petitioner would have been inconsistent with the defense actually presented by counsel. Petitioner's defense at trial was that "he was returning to the flea market to pay for an item his son had stolen[,]"[2] meaning that presentation of a defense that petitioner was so drunk that he did not know what he was doing would have required counsel to have presented an alternate, contradictory defense. "An attorney 'could reasonably choose to avoid confusing the jury with alternative defenses . . . ." *Guilmette v. Howes*, 624 F.3d 286, 298 (6th Cir. 2010) (Boggs, J., concurring in part and dissenting in part) (quoting *United States v. Smith*, 10 F.3d 724, 729 (10th Cir. 1993)).

A reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Strickland*, 466 U.S. at 689. The Sixth Circuit has held that "[s]trategic choices by counsel, while not necessarily those a federal judge in hindsight might make, do not rise to the level of a Sixth Amendment violation." *McMeans*, 228 F.3d at 682. The "range of reasonable applications" of the *Strickland* standard "is substantial" so under §2254(d), "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 131 S.Ct. at 788. Because a reasonable argument can readily be made that counsel's decision to not present the intoxication defense was strategic in nature, petitioner's argument that counsel should have done further investigation to buttress a possible intoxication defense must fail.

---

[2]*See* Doc. 6-2, p. 140 (Kentucky Court of Appeals opinion).

### E.  No Relief for Cumulative Errors

Petitioner's final argument is that the cumulative errors of counsel are sufficient to entitle him to habeas relief, even if any individual error standing alone would not merit habeas relief. However, "[t]he Sixth Circuit has consistently and explicitly held that a habeas petitioner cannot premise relief on a claim of cumulative trial errors." *Lickliter v. Chandler*, 2011 WL 4715164, at *10 (E.D.Ky. Sept. 14, 2011) (citing, e.g., *Williams v. Anderson*, 460 F.3d 789 (6th Cir. 2006)). Accordingly, petitioner's cumulative error claim must fail.

### III.  Conclusion and Recommendation

For the foregoing reasons, **IT IS RECOMMENDED** that the petition for writ of habeas corpus [Doc. 1] be **denied**.

Particularized objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service or further appeal is waived. Fed. R. Civ. P. 72(b)(2); *see also U.S. v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140, 155 (1985).  A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)(citing *Howard v. Secretary of HHS*, 932 F.2d 505, 508-09 (6th Cir. 1991)).  Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *Howard*, 932 F.2d at 509.  A party may respond to another party's objections within fourteen days of being served with a copy of those objections. Fed. R. Civ. P. 72(b)(2).

This the 29th day of January, 2013.



Signed By:
**J. Gregory Wehrman**
United States Magistrate Judge